IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| E.O.R. Energy L.L.C., and<br>AET Environmental, Inc.<br>Plaintiffs<br><br>vs.<br><br>1. Lisa Bonnett, as Director,<br>   Illinois Environmental Protection Agency, and<br>2. Illinois Environmental Protection Agency, and<br>3. Tom Johnson, as Executive Director,<br>   Illinois Pollution Control Board, and<br>4. Illinois Pollution Control Board<br><br>Defendants | Case No: |

## COMPLAINT

NOW COMES E.O.R. ENERGY L.L.C., ("EOR"), and AET ENVIRONMENTAL, INC., ("AET"), Colorado corporations, by and through their counsel Law Office of Felipe Gomez, Esq., and respectfully petition this Court for a declaratory judgment under 28 U.S.C. 2201, interpreting and declaring EOR's and AET's rights and obligations under the Safe Drinking Water Act (42 USC 300h, et seq.)("SDWA"), and the Resource Conservation and Recovery Act (42 USC 6901, et seq.)("RCRA") as codified and applied in Illinois.

### I. SUMMARY

1. The dispute brought herein arises in relation to the claims and interpretations of the Illinois Environmental Protection Agency ("IEPA")(as enforced by the

Illinois Pollution Control Board ("IPCB")), that it may regulate EOR and AET, and require EOR to obtain "Class I" hazardous waste underground injection permits under RCRA and the SDWA (as implemented in Illinois under 42 USC 300h-1, by way of 40 CFR 147.700), in order for EOR to conduct industry-standard underground injections known as "acidization" at its Illinois oilfields.

2. EOR, a small oil and gas producer, as is common in the oil and gas industry world-wide, routinely conducts what is called "acidization" of its oilfield leases located in Sangamon and Christian counties, Illinois

3. Acidization involves introducing various acidic solutions into new, and in this case older, depleted, oilfields to enhance secondary and tertiary oil recovery, which is done by way of gravity feed or low-pressure injection of the acid into oil and related injection wells.

4. The solutions clean lime and other scaling from the underground oil equipment, and also dissolve the limestone bedrock within which untapped oil and gas are trapped, generating gasses that provide the pressure to force the trapped oil and gas from the rock into the wells, resulting in enhanced oil and gas recovery.

5. The IEPA and IPCB maintain that AET (a hazardous materials broker) and EOR "arranged" for a shipment of acid from Colorado to Illinois that was then allegedly illegally injected into EOR's oilfields by EOR without a "Class I" underground injection permit, and IEPA has recently demanded penalties in excess of $10,000,000 from Plaintiffs for the failure.

6. EOR and AET maintain that, in Illinois, oilfield activities such as acidization are regulated by the Illinois Department of Natural Resources (" IDNR"), under

both the SDWA and RCRA, through EOR's IDNR-issued permits, under 42 USC 300h-4 and 40 C.F.R. 147.701.

7. EOR and AET claim that IEPA and IPCB lack authority to regulate EOR and AET, and lack subject matter jurisdiction to penalize and adjudicate alleged EOR and AET violations, under the statutory framework established by Congress and the U.S. Environmental Protection Agency ("USEPA").

8. EOR and AET also claim that EOR did not have to, and does not have to, obtain a second set of duplicative "Class I" permits to conduct acidization injections, since the express text of the SDWA and RCRA statutes and IEPA's enabling regulations at 40 CFR 147.700 prohibit IEPA from regulating EOR or requiring a second permit, and since EOR already had and to date has continuously held valid "Class II" underground injection permits allowing such injections, issued by the IDNR under RCRA and the SDWA as implemented in Illinois under 42 USC 300h-4, by way of 40 CFR 147.701.

9. This matter does NOT involve "fracking", which since 2013 has been separately regulated by Illinois under 225 ILCS 732, as implemented at 62 IAC 245.

## II. PARTIES

10. **EOR Energy, L.L.C.** is a Colorado corporation authorized to do business in Illinois, and doing business in Illinois, as a small, independent oil and gas producer by way of operating permits, and related "Class II" underground injection control ("UIC") permits, issued by the Illinois Department of

Natural Resources under 42 U.S.C. 300h-4 of the SDWA as codified at 40 CFR 147.701, allowing EOR to operate oil and gas production wells, as well as related underground injection and disposal wells, on EOR oil leases located in Sangamon and Christian counties, Illinois.

11. **AET Environmental, Inc.**, is a Colorado corporation doing business (not in Illinois) as a materials broker permitted by the U.S. Environmental Protection Agency ("USEPA") under the Resource Conservation and Recovery Act, 42 U.S.C. 6901 et seq. ("RCRA") to handle, transport and store solid and hazardous wastes, and by the U.S. Department of Transportation to do the same with hazardous materials. EOR and AET have offices in the same Denver, Colorado, building, but AET did not and does not do business in Illinois. AET is an "interested party" hereto due to IEPA's attempt to impose derivative joint and several liability upon AET for EOR's alleged violations.

12. **The Illinois Environmental Protection Agency** is the federally-designated Illinois agency authorized by USEPA to administer and enforce the federal RCRA and SDWA regulations applicable to persons injecting hazardous wastes and other materials regulated under RCRA in Illinois, by way of 42 USC 300h-1 as codified at 40 CFR 147.700.

13. **Lisa Bonnet** is the Director of the IEPA, and is named in that capacity, only.

14. The **Illinois Pollution Control Board** is a legislatively-created, combined rulemaking and quasi-judicial panel which hears IEPA complaints and issues penalties against alleged IEPA permit violators, including persons

whom allegedly inject without a "Class I" underground injection permit in violation of 42 USC 300h-1, as codified at 40 CFR 147.700 and 272.700.

15. **Tom Johnson** is the Executive Director of the IPCB, and is named in that capacity, only.

## III. FACTS

16. On various dates prior to 2002, IDNR issued, and EOR has continuously held to date, permits allowing EOR to operate oil and gas production wells and related underground secondary enhanced-recovery injection and underground injection disposal well,s on EOR oil leases located in Sangamon and Christian counties, Illinois. *Attachment A - IDNR List of EOR's IDNR Permits.*

17. On March 23, 2007, the IEPA, by way of the Illinois Attorney General, filed a complaint before the Illinois Pollution Control Board (IPCB Case No. PCB 07-95), against EOR and AET, alleging that EOR and AET had violated RCRA 42 USC 300h-1, as codified in Illinois by 40 CFR 147.700, by arranging for the illegal transport of a hazardous waste (in the form of an acid solution) into Illinois from Colorado, for the purpose of disposal by injection in Illinois, and that EOR injected same without EOR first having obtained an IEPA-issued Class I hazardous waste disposal underground injection permit under 42 USC 300h-1. *Attachment B - IEPA Complaint.*

18. On September 6, 2012, January 13, 2013, and April 18, 2013, and other dates, acting on the IEPA complaint (prosecuted by the Illinois Attorney

General), the IPCB issued orders purporting to find that EOR and AET had violated the state-authorized regulations implementing the federal SDWA and RCRA injection bans, by injecting or otherwise introducing acid into EOR's Class II and oil wells without an additional IEPA 42 USC 300h-1 "Class I" UIC permit, and ordering EOR to cease such activities until an IEPA Class I injection permit is obtained under 40 C.F.R. 147.700, and fining EOR and AET $260,000.

19. On December 15, 2015, the IEPA issued Demand Letters to EOR and AET demanding up to over $10,000,000 in one-time and daily penalties for AET's and EOR's alleged violations and EOR's alleged on-going failure to obtain Class I permits, and for failure to pay the initial $260,000 penalty, threatening litigation if the demands are not met. *Attachment C - IEPA Demand Letters.*

## V. JURISDICTION & ACTUAL CONTROVERSY

20. This matter arises under and involves interpretation and application of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. Secs. 300h-1 and 300h-4, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6901 et seq., as applied to underground injection of materials intended to enhance the recovery of natural resources, and as codified at, *inter alia*, 40 CFR Parts 147.100, 147.700 and 147.701.

21. This Court has 28 U.S.C. § 1331 concurrent federal question jurisdiction over plaintiffs' claims since they arise from operation and application of federal law under the SDWA, 42 USC 300h, et seq., and under the RCRA, 42 USC 6901 et seq., as applied to a "Class II" injection permit holder in

Illinois under the provisions under the SDWA and RCRA.

22. Plaintiffs seek relief from being required to pay penalties for EOR's alleged past lack of a Class I permit, and from being required in the future to obtain a 40 CFR 147.700 Class I underground injection permit by IEPA and the IPCB, when EOR has already obtained Class II injection permits for EOR's oil and gas production-related operations in Illinois, from IDNR under 40 CFR 147.701.

23. Declaratory relief is warranted since it would resolve the dispute between AET, EOR and Illinois, and would alleviate EOR's quandary as to whether EOR (and arguably all of the hundreds of similar small operators in Illinois) is required to obtain separate, and costly, Class I permits from IEPA to conduct secondary recovery of oil and gas in Illinois, thus clarifying the legal relations at issue between EOR, IEPA, and the IPCB with regard to the SDWA and RCRA as codified at 40 C.F.R. 147.700 and 147.701 and elsewhere.

24. An actual controversy exists since there is a substantial controversy between parties having adverse legal interests, including a December 15, 2015, penalty assessment of over $10,000,000 by IEPA and the IPCB against EOR and AET, which implicates Due Process and the Commerce Clause, and which involves critical aspects of federal environmental law and interstate commerce that affect all "small-oil" producers such as EOR (producing 9 million bbls/year in Illinois of secondary recovery oil), of sufficient immediacy, economic impact, and reality, to warrant the issuance of a declaratory judgment in effort to deter unneeded and protracted litigation.

25. The relief sought herein will further efficient judicial administration as it will prevent protracted litigation between AET, EOR and IEPA in state and then back in federal court within the functions without straining the limitations of the federal judicial power, or requiring injunctive relief (without a declaration, and then ignorance of same, first).

26. Traditional principles of equity and basic fairness can be adhered to without similarly straining the limits of the Eleventh Amendment, comity, federalism, and other related constitutional concerns, since the basic issues, rights, and obligations to be declared arise under federal laws RCRA and the SDWA, and the state agencies involved were and are operating as federal agents under express federal authority, and have written agreements with USEPA acknowledging such relationship.

27. Given that the claims are rooted in federal law, and do not involve a dispute between a citizen of Illinois and Illinois, they are the type of issues a federal district court is empowered to determine.

28. Given that a declaratory judgment will serve a useful purpose and resolve the controversy between the parties (as it should be a conclusive defense for EOR and AET to tuilize in the event that Illinois elects to collect on the demand letters or to attempt to further regulate EOR's acidization operations), and otherwise would help clarify whether a Class I permit is needed to acidize a well that already has a Class II permit, a proposition that could cost EOR and similar small producers millions, or more likely, force them out of business altogether, this is a matter that the Court should embrace within its discretionary powers.

29. Since this matter arises and flows directly from federal laws, subject matter jurisdiction is present, and since an actual controversy exists that would be resolved by a declaration of rights and obligations thereunder, this Court has jurisdiction and should exercise its discretion to interpret the federal laws at issue as applied to acidization of oilfields, and issue a declaratory judgment, and further ancillary relief, if needed and after request and notice, pursuant to 28 U.S.C. §§ 2201 and 2202.

## VI. VENUE

30. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants "reside" in this District, and because Plaintiff EOR's oilfields at issue here are located in this District in Christian and Sangamon Counties.

## VII. FEDERAL QUESTION PRESENTED

### A. Regulatory Framework

31. Nationwide, and specific to this case, injections of fluids, including those that occur at and into oilfields, are regulated by the USEPA under the SDWA, 42 U.S.C. 300h, and under RCRA, 42 U.S.C. 6924(f) and 6939, as part of what is known as the Underground Injection Control ("UIC") program.

32. Pursuant to delegation provisions in those laws, USEPA has approved selected state agencies to administer the various permitting, regulatory and enforcement duties USEPA would otherwise have to perform in relation to regulating underground injections. *See 42 U.S.C. 300h-1; 42 U.S.C. 300h-4; 40 C.F.R. 147* et seq.

 

33. Under the SDWA and RCRA, USEPA retains the ultimate authority in such "primacy" states, and USEPA regulations are the final word regardless of whether USEPA is the lead regulator or an approved state agency is overseeing the UIC program(s).

34. In Illinois, as with most states, the federally-approved UIC program is divided into two parts, with oil and gas-related injections being regulated by IDNR under 42 U.S.C. 300h-4, and other injections of hazardous and non-hazardous wastes regulated by IEPA under 42 U.S.C. 300h-1.

35. These delegations, which are the crux of EOR and AET's claim as to lack of IEPA and IPCB subject matter jurisdiction to enforce UIC regulations and the orders, are codified at 40 C.F.R 147.700 (IEPA) and 147.701 (IDNR), respectively.

**B. Federal Underground Injection Control Framework**

   **i. Safe Drinking Water Act UIC and Federal Grant Provisions**

36. Pursuant to SDWA 42 U.S.C. 300h(a) and (b), USEPA promulgated nationwide regulations to control underground injection activities which might threaten underground sources of public drinking water, such as the underground injection of contaminants, including hazardous wastes, which are codified at 40 C.F.R. 144 and 146.

37. Pursuant to 42 U.S.C. 300h-1 and 40 C.F.R. 145, USEPA determined which states needed to implement the new injection control regulations in order to assure protectiveness, and either approved or disapproved those state's

applications for determinations of compliance and program approval, as codified at 40 C.F.R. 147.

38. Pursuant to 42 U.S.C. 300j-2(b), USEPA provides grants to States of up to seventy-five percent of a State's UIC program costs, including to both IDNR and IEPA, and on information and belief, Plaintiff's allege that both IEPA and the IPCB utilized federal funds, in part or in whole, in prosecuting EOR and AET.

### ii.  Six Classes of UIC Wells Designated Under SDWA

39. 42 U.S.C. 300h and the federal regulations promulgated thereunder at 40 CFR 144, distinguish between six basic types of injection wells, Classes I, II, III, IV, V and VI.

40. This matter involves what are known as Class I deep injection waste disposal wells, and Class II brine and oil waste disposal and secondary recovery injection wells.

41. Class I wells inject hazardous and non-hazardous wastes into deep, isolated rock formations below a water supply, and are used by industrial operations and municipalities to safely dispose of approved wastes.

42. Class II wells are used exclusively inject brine, and other fluids associated with oil and natural gas production (including chemicals and hazardous materials such as acids) into the oil-containing subsurface rock layers and formations, in order to enhance production by way of secondary and tertiary recovery of the oil adhering to the rock, as well as that trapped in the pores thereof.

### iii. Resource Conservation and Recovery Act UIC Provisions Are Enforced Under SDWA UIC Program Per 42 U.S.C. 6939b(c)

43. RCRA 42 U.S.C. 6924(d) established what is known as the RCRA "Land Ban", prohibiting the disposal of various listed wastes onto or into land, including "Liquid hazardous waste having a pH less than or equal to two (2.0)" *42 U.S.C. 6924(d)(2)(C)*.

44. 42 U.S.C. 6924(f) specifically bans injection of the "Land Ban" wastes into deep wells without prior approval from USEPA.

45. RCRA 42 U.S.C. 6939b(a) further regulates injections by providing that:

    "No hazardous waste may be disposed of by underground injection—

    (1) into a formation which contains (within one-quarter mile of the well used for such underground injection) an underground source of drinking water; or

    (2) above such a formation.

46. Congress addressed the overlap of the RCRA and SDWA authorities in relation to UIC programs at 42 U.S.C. 6939b(c), requiring the RCRA prohibitions against underground injections of hazardous wastes to be enforced by way of the SDWA UIC regulations (40 C.F.R. Parts 144-148).

47. 42 U.S.C. 6939b(c) provides, in relevant part:

    "(c) Enforcement. In addition to enforcement under the provisions of this chapter, the prohibitions established under paragraphs (1) and (2) of subsection (a) of this section shall be enforceable under the Safe Drinking Water Act [42 U.S.C. 300f et seq.] in any State—

    (1) which has adopted identical or more stringent prohibitions under part C of the Safe Drinking Water Act [42 U.S.C. 300h et seq.] and which has assumed primary enforcement responsibility under that Act for enforcement of such prohibitions

### iv. RCRA Land Ban Exemption Petition and USEPA Approval Required for Class I Wells in Addition to UIC Permit

48. 40 C.F.R. 148.20 requires that, in addition to obtaining a Class I UIC permit from an authorized State, a Class I well operator must also petition USEPA directly for an exemption from the 42 U.S.C. 6924 "land ban" prior to legally operating a Class I well, or prior to injecting a banned waste not previously approved for injection in a Class I well.

49. 40 C.F.R. 148.20(a) provides:

> (a) Any person seeking an exemption from a prohibition under subpart B of this part for the injection of a restricted hazardous waste into an injection well or wells shall submit a petition to the Director demonstrating that, to a reasonable degree of certainty, there will be no migration of hazardous constituents from the injection zone for as long as the waste remains hazardous.

50. Consequently, if the IEPA interpretation that EOR is required to have a Class I UIC permit to acidize its oilfields is correct, EOR is also required to petition USEPA directly to allow such injections.

### v. USEPA Established Separate UIC Programs for IDNR and IEPA

51. On May 11, 1984, USEPA formally approved Illinois' two separate UIC programs, as published at 49 Fed. Reg. 20204.

52. Pursuant to 42 U.S.C. 300h-1, USEPA approved IEPA as the Class I, III, IV, and V regulator, and listed the applicable laws and rules adopted as the federal program:

> "§ 147.700  State-administered program-Class I, III, IV, and V wells
> 
> The UIC Program for Class I, III, IV, and V wells in the State of Illinois is the program administered by the Illinois Environmental Protection Agency, approved by

EPA pursuant to Section 1422 of the SDWA."

53. Pursuant to 42 U.S.C. 300h-4, USEPA approved the then Illinois Department of Mines and Minerals as the Class II well regulator, and listed the applicable sources of authority adopted by USEPA:

"§ 147.701 State-administered program-Class II wells

The UIC Program for Class II wells in the State of Illinois is the program administered by the Illinois Department of Mines and Minerals, approved by EPA pursuant to Section 1425 of the SDWA."

54. IDNR now administers the UIC program as successor to the Illinois Department of Mines and Minerals ("IDMM"), which became the IDNR Office of Mines and Minerals, which Office still oversees the Class II UIC program by way of supervising the IDNR Division of Oil and Gas.

### vi. IDNR Enforces All SDWA and RCRA UIC Requirements at Oilfields and Class II Wells

55. Pursuant to RCRA 42 U.S.C. 6939b(c) and SDWA 42 U.S.C. 300h, 40 C.F.R. 147.701 expressly and specifically authorizes the IDNR to enforce and apply all SDWA and RCRA UIC requirements applicable to Class II injection wells in Illinois.

56. IDNR is authorized under 42 U.S.C. 300h-4 (SDWA Sec. 1425), per 40 CFR 147.701, to impose all SDWA Sec. 1425 and all RCRA Sec. 3006 requirements applicable to EOR's Class II injection wells. Conversely, under federal law, Class II wells are not subject to regulation by IEPA under the SDWA or RCRA as that authority is limited by 40 C.F.R. 147.700, and federal law provides no exceptions that allow IEPA to require a Class I permit for a Class II well.

### vii.  Federally-Approved IEPA Enabling Statute Expressly Prohibits IEPA From Enforcing Class I UIC Regulations at Class II Wells

57. IEPA is prohibited from regulating a Class II UIC well operator by the very statute it administers applicable to Class I wells, the Illinois Environmental Protection Act, which is based nearly identically on the federal RCRA, and which was adopted by USEPA at 40 C.F.R. 147.700 to be implemented by IEPA as to all but Class II wells. 415 ILCS 5/4(l) provides:

> "The Agency is hereby designated as water pollution agency for the state for all purposes of the Federal Water Pollution Control Act, as amended; as implementing agency for the State for all purposes of the Safe Drinking Water Act, Public Law 93-523, as now or hereafter amended, *except Section 1425 of that Act [State Programs for Class II Wells Related to Oil and Gas]. (Brackets in Original, Emphasis added).*

58. 415 ILCS 5/45(a) expressly bars IEPA from overstepping IDNR and taking enforcement actions at Class II wells under 415 ILS 5/ et seq.:

> "Nothing in this Act shall be construed to limit or supersede the provisions of the Illinois Oil and Gas Act and the powers therein granted to prevent the intrusion of water into oil, gas or coal strata and to prevent the pollution of fresh water supplies by oil, gas or salt water or oil field wastes, except that water quality standards as set forth by the Pollution Control Board apply to and are effective within the areas covered by and affected by permits issued by the Department of Natural Resources.

59. 35 IAC 704.102 also exempts Class II wells from IEPA regulation:

> "...Class II wells (Section 704.106(b)) are not subject to the requirements found in 35 Ill. Adm. Code 702, 704, 705, and 730. The UIC permit program for Class II wells is regulated by the Illinois Department of Natural Resources, Office of Mines and Minerals, Oil and Gas Division, pursuant to the Illinois Oil and Gas Act [225 ILCS 725] (see 62 Ill. Adm. Code 240).

60. 42 USC 300h-4 of the SDWA provides the authority for IDNR to administer the federally-approved State UIC programs for oil and gas leases and related Class II UIC wells in Illinois, and 42 USC 300h-1 provides IEPA over the other classes of wells.

61. The federal question presented is whether, under federal law, the injection of acid into a Class II well is regulated exclusively by IDNR under the SDWA and RCRA and 225 ILCS 725 for both SDWA and RCRA purposes, or whether IEPA may also regulate a Class II or oil well, and require a second, Class I, permit (which in turn requires EOR to petition USEPA allow acidization of its oilfields, where there was no such IEPA requirement or rule prior to the March 27, 2007 complaint and IPCB orders "confirming" such "concurrent" IEPA (and its own) jurisdiction.

## VII.  NEED FOR RELIEF REQUESTED

62. The IPCB orders and Demand Letters against EOR and AET are final and subject to enforcement by the Illinois Attorney General or the States Attorneys of Christian and Sangamon Counties, are incurring interest in the amount of 9% per year, are a contingent liability for EOR and AET, create uncertainty as to what business AET or EOR may conduct in Illinois (with regard to already IDNR-permitted Class II wells and the chemicals used in them), and force EOR to either cease operations in Illinois, obtain a second permit, or face future enforcement action and fines in the event IEPA elects to continue enforcing 40 C.F.R. 147.700 as to EOR's Class II wells.

63. The IPCB orders and Demand Letter are evidence of actual controversy and imminent harm and of the IEPA and IPCB intent to proceed in derogation of controlling federal law and AET's and EOR's rights under the RCRA, SDWA, and U.S. Constitution (Due Process, Equal Protection)

64. The ultra vires, ad hoc rulemakings of IEPA and IPCB present real harm as they illegally create rules without notic or public comment, and assess penalties against AET (which had zero contacts with this forum) and EOR, for EOR's otherwise previously lawful conduct, and are in contradiction of IEPA and IPCB's express grant of federal authority.

65. Furthermore, the IEPA position, if correct, would mean that EOR would now also have to petition USEPA for a waiver or exemption, in addition to obtaining an IEPA Class I permit, where no such obligations existed before.

## VIII. RELIEF REQUESTED

66. **WHEREFORE, Plaintiffs EOR and AET respectfully request that the Court declare and order:**

   A. Under federal law, EOR's Class II injection wells in Illinois have been and are subject only to IDNR regulation and permit requirements, per the express provisions of the SDWA and RCRA, as codified at 40 CFR 147.700 and 701;

   B. Under federal law, IEPA and IPCB may not regulate or require a second UIC injection permit under 40 C.F.R. 147.700, for EOR's Class II wells in addition to its existing IDNR Class II permits, or otherwise penalize EOR for failure to acquire a Class I permit;

   C. Under federal law, the IPCB Orders and Demand Letters, and the underlying action, IPCB Matter No.   against EOR and AET are void and of no effect due to lack of statutory authority and subject matter jurisdiction;

D.  Plaintiffs EOR and AET be awarded all attorneys fees and costs incurred;

E.  Any and all additional relief, including prospective injunctive relief under 28 U.S.C. 1651 and/or 28 U.S.C. 2202, if and as needed, in Plaintiffs' favor as may be just.

Respectfully Submitted By: _____

5.4.16

Felipe Gomez, Esq., Counsel of Record for Plaintiffs

Date: May 4, 2016

Law Office of Felipe Gomez Esq.

2647 N. Western Ave #188

Chicago, IL 60647-2034

312-399-3966

gomzfng3@gmail.com

IARDC 6197210