IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| E.O.R. ENERGY L.L.C., and<br>AET ENVIRONMENTAL, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALEC MESSINA, as Director of<br>Illinois Environmental Protection<br>Agency, and ILLINOIS<br>ENVIRONMENTAL PROTECTION<br>AGENCY,<br><br>    Defendants. | No. 3:16-CV-03122 |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss Second Amended Complaint (d/e 45) filed by Defendants Alec Messina, Director of the Illinois Environmental Protection Agency (IEPA) and the IEPA.  Because the suit is barred by the Eleventh Amendment and collateral estoppel, Defendant's Motion to Dismiss is GRANTED.

# I. BACKGROUND

Plaintiffs E.O.R. Energy, LLC (EOR) and AET Environmental, Inc. (AET) purport to bring this cause of action pursuant to the citizen suit provisions of the Resource Conservation and Recovery Act and the Safe Drinking Water Act. See 42 U.S.C. § 6972; 42 U.S.C. § 300j-8. Therefore, a brief description of the two Acts is necessary.

The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., "is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." Meghrig v. KFC W., Inc., 516 U.S. 479, 483 (1996). The primary purpose of the Act is to reduce the hazardous waste that is generated and ensure that the hazardous waste is properly treated, stored, and disposed. Id. The Resource Conservation and Recovery Act allows each state to promulgate its own hazardous waste program. 42 U.S.C. § 6926(b). If the United States Environmental Protection Agency (USEPA) approves the state's program, the state's standards supersede the federal regulations. AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342, 1350 (7th Cir. 1997).

Congress enacted the Safe Drinking Water Act, 42 U.S.C. § 300f et seq., "with the basic goal of protecting the purity of the drinking water provided by the nation's public water systems." United States v. Mass. Res. Auth., 256 F.3d 36, 38 (1st Cir. 2001). Part C of the Safe Drinking Water Act governs the protection of underground sources of drinking water. See 42 U.S.C. § 300h; Natural Res. Def. Council, Inc. v. U.S. E.P.A., 824 F.2d 1258, 1269 (1st Cir. 1987) (noting that, in Part C, "Congress sought to protect underground sources of drinking water from what are termed 'underground injections'").

Section 300h(a)(1) of the Safe Drinking Water Act directs the Administrator of the USEPA to promulgate regulations setting forth the minimum requirements for state underground injection control (UIC) programs. A state assumes primary enforcement of a UIC program by enacting its own program and obtaining approval from the USEPA. See 42 U.S.C. § 300h-1.

The USEPA approved Illinois' program for regulating underground injection wells. 49 Fed. Reg. 20138-01, 20204 (May 11, 1984); see also 40 C.F.R. § 147.700 (stating that the UIC program of Class I, III, IV and V wells in Illinois—with the

exception of those on Indian lands—is the program administered by the IEPA and approved by the USEPA); 40 C.F.R. § 147.701 (same re: Class II wells). Therefore, Illinois' standards regarding underground injection wells operate in lieu of the otherwise applicable federal programs. See 42 U.S.C. § 6926(b); 42 U.S.C. § 300h-1. Illinois' state program classifies Class I and Class II wells as follows:

> a) Class I injection wells. A Class I injection well is any of the following:
>
> > 1) A Class I hazardous waste injection well that is used by a generator of hazardous waste or an owner or operator of a hazardous waste management facility to inject hazardous waste beneath the lowermost formation containing an underground source of drinking water within 402 meters (one-quarter mile) of the well bore.
> >
> > 2) An industrial or municipal disposal well that injects fluids beneath the lowermost formation containing an underground source of drinking water within 402 meters (one-quarter mile) of the well bore.
> >
> > 3) A radioactive waste disposal well that injects fluids below the lowermost formation containing an underground source of drinking water within 402 meters (one-quarter mile) of the well bore.
>
> b) Class II injection wells. A Class II injection well is one that injects any of the following types of fluids:

> 1) Fluids that are brought to the surface in connection with conventional oil or natural gas production and which may be commingled with wastewaters from gas plants that are an integral part of production operations, unless those waters are classified as a hazardous waste at the time of injection;
>
> 2) Fluids that are used for enhanced recovery of oil or natural gas; and
>
> 3) Fluids that are used for storage of hydrocarbons that are liquid at standard temperature and pressure.

35 Ill. Admin. Code § 730.105(a)(1),(b)(1).

Plaintiff EOR is a small, independent oil producer operating two oil leases, one in Sangamon County and one in Christian County. Sec. Am. Compl. ¶ 1. EOR holds seven oil producing operating permits, two related Class II underground injection control disposal permits, and one gas injection permit issued by the Illinois Department of Natural Resources (IDNR). Id. ¶ 2. Plaintiff AET provides material broker services and is licensed to handle, transport, and store solid and hazardous wastes. Id.

On March 23, 2007, the IEPA filed a complaint before the Illinois Pollution Control Board (Board) alleging that EOR and AET unlawfully transported hazardous waste from Colorado to Illinois for disposal and that EOR unlawfully disposed of the hazardous

waste in its Illinois underground injection wells without first obtaining a proper permit for hazardous waste disposal. Sec. Am. Compl ¶ 66; Ex. 8, IEPA complaint ¶ 23 (alleging that EOR discharged hazardous waste into wells between August 2002 and February 2004). In 2012 and 2013, the Board issued orders finding that EOR and AET committed the alleged violations and ordered EOR to cease and desist from the alleged violations. Id. ¶¶ 67, 68; see also Ex. 9 (d/e 43-1, 13 of 21) (finding that EOR violated the Illinois Environmental Protection Act by injecting hazardous waste acid into wells without a UIC permit).

The Court takes judicial notice of the Illinois Appellate Court decision that followed Plaintiffs' appeal of the Board's decision. E.O.R. Energy, LLC v. Pollution Control Bd., 2015 IL App (4th) 130443 ¶ 61 (2015), appeal denied, 39 N.E.3d 1001, 39 N.E.3d 999, cert. denied 136 S. Ct. 1684 (2016); see Olson v. Champaign Cnty., Ill., 784 F.3d 1093, 1096 n.1 (7th Cir. 2015) (a court may take judicial notice of documents in the public record when ruling on a motion to dismiss under Rule 12(b)(6)). On administrative review, Plaintiffs argued that the IEPA and the Board did not have jurisdiction and, even if they did have jurisdiction, the record failed

to support the Board's grant of summary judgment.  E.O.R. Energy, 2015 IL App (4th) 130443 ¶ 61.  The appellate court affirmed.

Specifically, the appellate court agreed with the Board that the acid material at issue constituted waste or hazardous waste within the meaning of the Illinois Environmental Protection Act (415 ILCS 5/3.220).  Id. ¶ 80.  In addition, the court rejected Plaintiffs' argument that the acid material injected into the Class II wells fell within the exclusive regulatory jurisdiction of the IDNR under the Oil and Gas Act.  Id. ¶ 91.

The appellate court noted that the General Assembly created a comprehensive statutory structure—known as the Illinois UIC program—for the regulation of underground injection of materials into wells.  E.O.R. Energy, 2015 WL App (4th) 130443, ¶ 83.  The Illinois UIC program was promulgated with federal approval pursuant to the federal UIC program, which allows states the option of implementing their own UIC programs that comply with federal standards.  Id.  The federal UIC program was promulgated under the Safe Drinking Water Act and, to the extent the program

deals with hazardous waste, the Resource Conservation and Recovery Act.  Id.

The appellate court noted that the Illinois Environmental Protection Act designated the IEPA as the implementing agency for all purposes of the Safe Drinking Water Act, with the exception of section 300h-4 of the Safe Drinking Water Act, which provides the authority for federally approved state programs relating to "(1) the underground injection of brine or other fluids which are brought to the surface in connection with oil or natural gas production or natural gas storage operations, or (2) any underground injection for the secondary or tertiary recovery of oil or natural gas."  Id. ¶ 84. (quoting 42 U.S.C. § 300h-4 (2006)).  "Illinois's package of UIC-related statutes and regulations submitted to the federal government for approval provided that Class II wells ... be regulated by the IDNR under the Oil and Gas Act.  E.O.R. Energy, 2015 WL App (4th) 130443, ¶ 84 (also noting that Class II wells are known as "oil-and-gas-related-injection wells").  The IEPA was given the authority over hazardous-waste injection wells, which include Class I wells.  Id. (citing 35 Ill. Adm. Code 730.105 (2012).

The appellate court found that the Oil and Gas Act provided the IDNR authority only over Class II injections into Class II injection wells, meaning that the IDNR's regulatory power under the UIC program was limited to the injection of fluids associated with oil and gas extraction. Id. ¶ 87. Because the material injected in the case was not a Class II fluid that the IDNR was authorized to regulate, and because the material was an acid material that fell within the Environmental Protection Act's definition of "hazardous waste," the IEPA and the Board had jurisdiction over the injection. Id. ¶ 88. The fact that the material was injected into a Class II well did not matter for jurisdictional purposes. Id.

Finally, the appellate court held that the facts of the record were sufficient to support the Board's grant of summary judgment. Id. ¶¶ 93-97. On December 15, 2015, the IEPA issued demand letters to EOR and AET seeking payment of the assessed penalties as well additional penalties for the failure to comply with the Board's final orders. Id. ¶ 69, Ex. 10.

Plaintiffs originally filed this suit in May 2016. In September 2016, Plaintiffs filed a First Amended Complaint (d/e 17). In the

First Amended Complaint, Plaintiffs asked this Court to declare and order that (1) under federal law, Class II injection wells in Illinois are subject only to IDNR regulation and permit requirements, per the express provisions of the Safe Drinking Water Act and Resource Conservation and Recovery Act, as codified at 40 C.F.R. § 147.700 and 701; and (2) under federal law, the IEPA and the Pollution Control Board may not regulate or require a second UIC injection permit under 40 C.F.R. § 147.700 for Class II wells in addition to existing IDNR Class II permits.

Defendants moved to dismiss the First Amended Complaint on the grounds of res judicata, collateral estoppel, and the Eleventh Amendment. Mot. to Dismiss (d/e 18). This Court rejected Defendants res judicata and collateral estoppel arguments, interpreting Plaintiffs' complaint as seeking a declaratory judgment "that only IDNR has the authority to regulate the injection of acid—as distinguished from hazardous waste—into Class II wells and that EOR does not have to obtain a separate Class I permit from the IEPA to conduct secondary recovery of oil and gas in Illinois." Opinion at 13 (d/e 36). The Court found that this issue did not arise from the same operative facts as those

resolved in the earlier action.  Id. at 13-14.  The Court questioned, however, whether Plaintiffs could demonstrate an actual controversy and granted Plaintiffs leave to replead.  Id. at 15-16.  The Court deferred ruling on the Eleventh Amendment argument.  Id. at 17.

In May 2017, Plaintiffs filed their Second Amended Complaint.  In the Second Amended Complaint, EOR states that it wants to conduct "acidization" of its Illinois oil leases, a process Plaintiffs describe as a secondary oil recovery method involving the underground injection of hazardous materials.  Sec. Am. Compl. ¶¶ 3, 4.  In addition, EOR wants to use "unwanted acid" that costs little or nothing, like the acid it used when EOR was prosecuted by the IEPA.  Id. ¶ 40; see also id. ¶ 51 (stating that EOR plans to acidize its wells using "off-spec" acid without obtaining a Class I permit).  AET is interested in brokering acids available on existing secondary hazardous material exchanges for EOR's upcoming acidization but is afraid to engage in such activity because AET was prosecuted for EOR's last acidization.  Id. ¶ 8.

Plaintiffs seek a declaratory judgment that the IEPA cannot require that EOR obtain a Class I UIC permit for Class II wells in

addition to the existing IDNR Class II permit and/or that EOR need not obtain a second permit under Section 300h-1 of the Safe Drinking Water Act to conduct "do-it-yourself" mini-acidization of its wells using local labor and off-spec acids from the secondary market. Sec. Am. Compl. ¶¶ 117, 122. Plaintiffs assert that a declaratory judgment is necessary because of the prior IEPA action, the Board's orders appearing to prohibit EOR from acidizing its wells, and the current threat of further enforcement of EOR's last attempted acidization in 2004. Id. ¶ 4.

Defendants have filed a Motion to Dismiss asserting that the Eleventh Amendment bars Plaintiffs' claims, Plaintiffs fail to allege any violations of federal environmental statutes, and Plaintiffs fail the "zone of interests" test. Defendants further argue that, to the extent Plaintiffs claim that they were not engaging in the disposal of hazardous waste in the prior proceeding, that argument is foreclosed by the doctrine of collateral estoppel.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide

a short and plain statement of the claim showing she is entitled to relief and giving the defendants fair notice of the claims.  Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).  When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in her favor.  Id.

   The Court may consider documents attached as exhibits to the complaint when ruling on a motion to dismiss.  Ctrs. v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005); Fed R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").  If the exhibit conflicts with the allegations in the complaint, the exhibit generally controls.  Massey v. Merrill Lynch & Co., Inc., 464 F.3d 642, 645 (7th Cir. 2006).

   A Rule 12(b)(6) motion to dismiss is proper when an affirmative defense is disclosed by the complaint.  Muhammad v. Oliver, 547 F.3d 874, 878 (7th Cir. 2008).  An affirmative defense is "disclosed in the complaint where (1) the facts that establish the defense are definitely ascertainable from the allegations of the

complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice; and (2) those facts conclusively establish the defense." Novickas v. Proviso Township High School 209, No. 09-cv-3982, 2010 WL 3515793, at *2 (N.D. Ill. Aug. 21, 2010).

### III. ANALYSIS

The Eleventh Amendment "bars federal jurisdiction over suits brought against a state, not only by citizens of another state or a foreign state, but also by its own citizens." MCI Telecomm. Corp. v. Ill. Bell Tel. Co., 222 F.3d 323, 336 (7th Cir. 2000). This jurisdictional bar applies "regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The immunity afforded by the Eleventh Amendment extends to state agencies. Id.

However, three exceptions to the Eleventh Amendment's bar apply. Specifically, a state can be sued in federal court where: (1) Congress has abrogated the state's immunity from suit, (2) a state has waived its immunity and consented to suit, or (3) the suit is one against a state official seeking prospective relief for an ongoing violation of federal law (Ex parte Young, 209 U.S. 123, 159-60

(1908)). See Ind. Prot. & Advocacy Serv. v. Ind. Family & Soc. Serv. Admin., 603 F.3d 365, 371 (7th Cir. 2010); Sonnleitner v. York, 304 F.3d 704, 717 (7th Cir. 2002).

In this case, Plaintiffs do not argue that Congress abrogated Illinois' immunity from suit or that Illinois has waived its immunity and consented to suit. Therefore, Plaintiffs' suit survives only if the suit is one against a state official seeking prospective relief for an ongoing violation of federal law.

Plaintiffs bring this action against Messina in his official capacity as Director of the IEPA and against the IEPA. The claim against the IEPA is clearly barred by the Eleventh Amendment. See U.S. Ecology, Inc. v. Carlson, 638 F. Supp. 513, 519 (C.D. Ill. 1986) (Eleventh Amendment barred suit against the IEPA). As for the claim against Messina in his official capacity, the Court must determine whether Plaintiffs are seeking prospective relief for an ongoing violation of federal law. When determining whether the doctrine of Ex parte Young applies, the Court conducts a "'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Public Serv.

Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (brackets omitted).

Plaintiffs argue in response to the Motion to Dismiss that they only seek a declaration that the IEPA may not regulate future injections of hazardous off-spec acids into EOR's Class II wells and oil wells. EOR Resp. at 2 (d/e 52); AET Resp. at 1-2 (adopting EOR's response). However, the Illinois Appellate Court held that the IEPA has jurisdiction over the injection of a hazardous waste into a Class II well. E.O.R. Energy, 2015 IL App (4th) 130443 ¶ 88; ¶ 91 (holding that the "unpermitted injection of hazardous-waste acid into EOR's wells (1) did not constitute a Class II injection authorized by the Oil and Gas Act . . . and; (2) therefore, fell within the EPA's and the Board's jurisdiction to enforce the provisions of the Environmental Act regulating hazardous waste"). The Illinois Appellate Court also affirmed the Board's decision that EOR violated the Environmental Protection Act by injecting hazardous waste acid in its wells without have a UIC permit. Board Order (d/e 43-1, 13 of 21); E.O.R. Energy, 2015 IL App (4th) 130443 ¶ 99 (affirming the Board's decision). Therefore, whether the IEPA may

regulate injections of hazardous off-spec acids into Class II wells and oil wells has been decided in previous litigation involving Plaintiffs, and Plaintiffs are collaterally estopped from raising it again. See Nowak v. St. Rita High Sch., 197 Ill. 2d 381, 390 (2001) (collateral estoppel applies where (1) the issue decided in the prior adjudication is identical to the issue presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) there is an identity of parties or their privies). Moreover, this Court cannot overturn the Illinois appellate court's determination that the IEPA has jurisdiction over the injection of hazardous waste in Class II wells and that EOR violated the relevant law by failing to obtain a Class I permit, which is essentially what Plaintiffs are asking this Court to do. See Brown v. Bowman, 668 F.3d 437, 442 (7th Cir. 2012) (the Rooker-Feldman doctrine bars federal claims where a plaintiff requests that the federal district court overturn an adverse state court judgment).

To the extent Plaintiffs' Second Amended Complaint can be construed as seeking a declaratory judgment that the IEPA cannot require EOR to obtain a Class I permit to conduct the secondary

recovery of oil and gas in Illinois that does not involve the injection of hazardous waste, Plaintiffs have failed to show an ongoing violation. Plaintiffs have alleged no factual basis for their assertion that the IEPA requires or will require a Class I permit to conduct the secondary recovery of oil and gas in Illinois that does not involve the injection of hazardous waste. Plaintiffs point to the Board orders and IEPA demand letters as evidence of a dispute whether EOR is required to obtain Class I permits to conduct secondary recovery of oil and gas in Illinois. However, those orders and demands pertain to Plaintiffs' unlawful transport, storage, and disposal of hazardous waste that was the subject of the appellate court decision discussed above. The orders and demand do not show that IEPA required or will require a Class I permit to conduct secondary recovery of oil and gas in Illinois that does not involve hazardous waste. Therefore, Plaintiffs have not shown on ongoing violation by the IEPA. Without an ongoing violation, Plaintiffs' claims do not fall within the exception set forth in Ex parte Young. Plaintiffs' claims are barred by the Eleventh Amendment.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss Second Amended Complaint (d/e 45) is GRANTED. The Second Amended Complaint is DISMISSED WITH PREJUDICE. This case is closed.

**ENTER: September 19, 2017**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**